OPINION
{¶ 1} Defendant-appellant, Ronald C. Moore, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of receiving stolen property, one count of forgery and one count of possessing criminal tools, and sentencing him accordingly. Because the trial court did not abuse its discretion in allowing the state's use of the fingerprint cards and in denying appellant's motion for a mistrial, we affirm that judgment.
 {¶ 2} By indictment filed August 5, 2002, appellant was charged with one count of receiving stolen property in violation of R.C. 2913.51, one count of forgery in violation of R.C. 2913.31, and one count of possessing criminal tools in violation of R.C. 2923.24. Appellant allegedly forged and cashed a stolen check. Appellant entered not guilty pleas to the charges and the case proceeded to a jury trial.
 {¶ 3} At trial, the state first presented the testimony of Richard Pope, an investigator for Huntington National Bank ("Huntington"). Pope testified that he investi-gated a customer's report of stolen checks. The customer, Beth Daulbaugh, reported the checks stolen in February 2001. The check at issue in this matter was dated March 1, 2001, and was cashed at a Huntington bank on March 2, 2001. The check was allegedly signed by Daulbaugh, made payable to appellant, and endorsed by appellant on the back of the check. Pope noted that there was also an Ohio driver's license number written on the back of the check. Pope testified that part of a bank teller's standard procedure when cashing a check is to ask the person for a picture ID to establish the identity of the person cashing the check. Pope then filed a police report with the Columbus Police Department ("CPD").
 {¶ 4} Detective Dean Jackson, a detective in the forgery and fraud unit of the CPD, investigated the police report Pope filed. He testified that, once a check is reported stolen, any people listed as payees on the check are considered suspects. Appellant was the payee on the check in question. Detective Jackson also testified that appellant's driver's license number was on the back of the check. Detective Jackson then submitted the check to the Crime Scene Search Unit to test it for fingerprints. He also had a handwriting expert analyze the writing on the check and compare that writing to appellant's known handwriting samples.
 {¶ 5} Ronald Waugh, a detective with the Crime Scene Search Unit of the CPD, processed the check for latent, or hidden, fingerprints. Detective Waugh noted a latent fingerprint on the check and forwarded the check for an evaluation of that fingerprint. Robert Lawson, a latent print examiner for the CPD, analyzed the fingerprint on the check. Lawson compared the latent fingerprint found on the check to appellant's known fingerprints. From this comparison, Lawson concluded that the fingerprint on the check was from appellant's right thumb. On cross-examination, Lawson admitted that there was one other latent fingerprint found on the check but that he could not identify that print.
 {¶ 6} Ann Dring, a document and handwriting examiner with the forgery and fraud unit of the CPD, testified that Detective Jackson asked her to examine the handwriting on the check and to compare it to known samples of appellant's signature. Detective Jackson gave her seven samples of appellant's known signatures. The signatures were on seven different cards used to record appellant's fingerprints between 1994 and 2001. After comparing the writing on the check to the samples, Dring concluded that it was likely that the person who endorsed the back of the check also signed the fingerprint cards. She could not conclude that appellant wrote any of the words on the front of the check.
 {¶ 7} Beth Daulbaugh's testimony was stipulated to by the parties. That stipula-tion indicated that Daulbaugh's purse was stolen on February 16, 2001, and the check relevant to this matter was inside her purse when it was stolen. She reported the theft to Huntington and the CPD. Daulbaugh did not write the check nor did she authorize anyone to write the check. Finally, she did not know appellant and did not give him permission to cash the check.
 {¶ 8} Appellant did not present any witnesses or evidence. The jury returned guilty verdicts on all three counts and the trial court sentenced appellant accordingly.
 {¶ 9} Appellant appeals, assigning the following assignment of error:
The Defendant Was Denied A Fair Trial In Violation Of His Right To Due Process Of Law When Evidence Was Admitted Which Provided The Jury With The Reasonable Inference That The Defendant Had Prior Criminal Involvement.
 {¶ 10} Appellant's assignment of error concerns the state's use of appellant's fingerprint cards during Dring's testimony. The cards were not admitted into evidence. However, they were shown to the jury as samples of appellant's signature that Dring used to compare with the signature on the stolen check. Dring testified that she received these cards from Detective Jackson. Printed on each of the cards were the words "Name of person being fingerprinted" and "may be computerized in local, state, and national files." After Dring's testimony, appellant requested a mistrial, claiming that the use of the cards disclosed to the jury that appellant had been fingerprinted seven times. Appellant argued that the fingerprint cards improperly implied to the jury that appellant had been previously involved in criminal activity. Although the trial court denied appellant's request for a mistrial, it did provide the jury with the following instruction after Dring's testimony:
* * * Those things were just used to aid the witness and give their testimony. There is some printing on there suggesting that the signatures came from previous fingerprinting. Unfortunately, had I known that was going to be there, I would have made sure that that wasn't on there, okay. I could do a couple things. I could say this is such a bad thing and declare a mistrial and start all over, which was what counsel is asking for at the sidebar, and I didn't allow it, because I think you are intelligent enough as a jury to disregard it and decide this case solely on the basis of the evidence and not the fact that the defendant might have been fingerprinted in the past, and that's where they got the samples.
What I am saying, I think the jurors are intelligent enough and smart enough, that if somebody slips up, and that was a slip-up, that you can put that out of your mind, and I instruct you to put that out of your mind and only consider it — That isn't going to be an exhibit. You are not going to have that as an exhibit. It was to ask her how to interpret fingerprints and please disregard it. Does anybody feel they are prejudiced that this person is not going to get a fair trial? Everybody is shaking their head, won't be, and we will have to disregard and let it go. Appreciate it.
 {¶ 11} Appellant claims the state's use of the fingerprint cards denied him a fair trial by inferring to the jury that he had previous criminal involvement. State v. Breedlove (1971), 26 Ohio St.2d 178. We disagree. In Breedlove, the Ohio Supreme Court held that it was prejudicial error to admit a police photograph with police identification numbers when testimony also indicated that the photographs were "of guys that have committed crimes." Id. at 180. The court held that this evidence provided the trier of fact with the improper inference that the defendant had prior criminal involvement. Id. at paragraph two of the syllabus.
 {¶ 12} This court has interpreted Breedlove's "prior criminal involvement" language to require that the disputed evidence provide a reference to more than just a brush with the law; rather, the disputed evidence must make a reference to the commission of another crime. State v. Reed (Aug. 27, 1981), Franklin App. No. 81AP-252 (affirming admission of police photographs referred to by officer testimony as "group of photographs of possible suspects involved in drugstore robberies" where evidence did not provide reasonable inference of prior criminal involvement); State v. Camp (Dec. 23, 1982), Franklin App. No. 82AP-575.
 {¶ 13} For example, this court found error in a trial court's decision to admit evidence of a defendant's previous fingerprinting when testimony indicated that the fingerprints appeared in the state's database because of his prior criminal record. State v. Staten (June 20, 1996), Franklin App. No. 95APA12-1664. The court found that testimony made "a clear reference to the commission of another crime, not just an implication defendant experienced some brush with the law." Id.; see, also, State v. Lee (Dec. 18, 2001), Franklin App. No. 01AP-16 (affirming admission of evidence that lacked clear reference to the commission of another crime).
 {¶ 14} Unlike Breedlove or Staten, in the case at bar there was no testimony that the fingerprint cards reflected appellant's prior criminal involvement. See id.; State v. Dent (May 21, 1987), Cuyahoga App. No. 52232. Dring only referred to the cards as "documents" and did not, as in Breedlove, identify them as being fingerprints of persons who had committed crimes. Her testimony indicated that she obtained them from Detective Jackson. Although these cards may imply that appellant had some prior contact with the police, it does not follow that a juror would assume that the individual committed a crime. Cf. Reed, supra; Dent, supra (affirming use of fingerprint cards where testimony did not indicate cards were result of previous criminal activity). "The existence of a fingerprint record is not, in itself, proof that the one fingerprinted is a criminal." State v. Harris (June 30, 1978), Summit App. No. 8745. The language on the cards indicates that appellant was fingerprinted and that those fingerprints may be kept in government files. Fingerprints are kept in a variety of local and national files for numerous reasons and do not necessarily lead to the conclusion that the fingerprints were taken in connection with the commission of another crime. Id.
 {¶ 15} Neither the fingerprint cards themselves nor the associated testimony indicate that appellant had previously been involved in criminal activity. Consequently, the trial court did not err by allowing the cards to be shown during Dring's testimony.
 {¶ 16} Moreover, even if the state's use of the fingerprint cards was improper, the trial court acted within its discretion in giving a curative instruction and in denying appellant's motion for a mistrial. Great deference is given to a trial court's decision to grant or deny a mistrial, "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." State v. Glover (1988), 35 Ohio St.3d 18,19. A decision to grant or deny a mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,182; State v. Goebelt (Feb. 23, 1993), Franklin App. No. 92AP-1242. The decision will only be reversed upon an abuse of that discretion. State v. Mengistu, Franklin App. No. 02AP-497, 2003-Ohio-1452, at ¶ 23. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Widder,146 Ohio App.3d 445, 2001-Ohio-1521, at ¶ 6, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} The trial court provided a curative instruction to the jury after Dring's testimony rather than declare a mistrial. Curative instructions are recognized as an effective way to remedy errors which occur during trial. State v. Zuern (1987), 32 Ohio St.3d 56, 61. Juries are presumed to follow such instructions. State v. Loza (1994),71 Ohio St.3d 61, 75. The trial court's curative instruction, while inartful, twice conveyed to the jury that it should disregard the fact that appellant had previously been fingerprinted and should determine appellant's guilt or innocence solely on the basis of the evidence presented. There is no indication that the jury did not follow the trial court's instruction. Mengistu, supra, at ¶ 63; see, also, Goebelt, supra. Therefore, even if showing the fingerprint cards to the jury was somewhat prejudicial to appellant, the trial court did not abuse its discretion by issuing a curative instruction rather than declaring a mistrial. State v. Garner (1995), 74 Ohio St.3d 49, 59 (affirming denial of mistrial when reference to defendant's prior arrests was promptly followed by a curative instruction); Cecil v. Beam (Mar. 28, 1997), Montgomery App. No. 16210.
 {¶ 18} Because the fingerprint cards and associated testimony do not make reference to the commission of a previous crime, and because the trial court properly instructed the jury to disregard any such inference that might be made from that evidence, the trial court did not err in allowing the state's use of the fingerprint cards and in denying appellant's motion for a mistrial. Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and SADLER, JJ., concur.
SUMMARY: Fingerprint cards which did not make a clear reference to the commission of another crime were properly used as exhibit. Moreover, trial court acted within its discretion in providing a curative instruction rather than to declare a mistrial.